IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

UNITED STATES OF AMERICA

v.

Baauan Sledge,
Defendant,

MOTION FOR NEW TRIAL
Pursuant to Fed. R. Crim. P. 33
Case No. 3:20-cr-042
Hon. Judge David L. Hovland

## MOTION FOR NEW TRIAL

AND Now, comes defendant, Baauan Sledge, Pro se, who humbly and respectfully submits the following motion, with incorporated memorandum, and moves this Court Pursuant to Federal Rule of Criminal Procedure 33 for a new trial in the interest of justice so as to prevent a miscarriage of justice.

### FACTS

Mr. Sledge declares under the Penalty of Perjury, 28 U.S.C. Section 1746, that the following facts are true and correct to the best of his knowledge:

Mr. Sledge and co-defendant, Darius Sledge were indicted on five counts stemming from their alleged Participation in an alleged drug distribution conspiracy in North Dakota: (1) conspiracy to distribute and Possess with intent to distribute a controlled substance, in violation of 21 U.S.C. Sections 846, 841 (a)(1), (b)(1)(c), and 18 U.S.C. section 2; (2) money laundering conspiracy, in violation of 18 U.S.C. section 1956(h) and (a)(1); (3) Possession with intent to distribute oxycodone, in violation of 21 U.S.C. section 841 (a)(1), (b)(1)(c), and 18 U.S.C. section 2; and (5) continuing criminal enterprise (CCE) in violation of 21 U.S.C. section 848(a) and (c).

As recounted in the Eighth Circuit Court of Appeals July 16, 2024 opinion reversing Darius Sledge's continuing criminal conviction and remanding Mr. Sledge's drug conspiracy conviction, it was alleged that, "[b]eginning in 2015) Baauan led Darius and others in establishing a pill distribution network... Transacting thousands of Pills at a time from Michigan, the group recruited local residents in North Dakota as sub-distributors, stored at their homes, and compensated them by

paying rent or phone bills. The scale of the operation was substantial. Darius and Baguan would make between 15 and 20 trips each year. Baguan was known to carry a gallon-sized plastic bag containing up to 10,000 pills at a time with each pill selling for between $40 and $80. Proceeds were physically transported back to Michigan or sent to family members via electronic money transfers. Despite being arrested in October 2019, Baguan continued his operation by calling Darius from jail. Darius was arrested the next year."

"Dozens of witnesses testified, and hundreds of exhibits were entered into evidence... During the trial, the district court admitted into evidence text messages, photographs, and videos from the phone of unindicted coconspirator Kevon Savage. The photographs and videos showed, among other things, Savage and Darius with large amounts of money and pills." See United States v. Darius Sledge, No. 23-1096 (8th Cir. July 16, 2024); United States v. Baguan Sledge, No. 23-1099 (8th Cir. July 16, 2024)).

The jury ultimately found Mr. Sledge guilty on all counts, and co-defendant Darius on all but one. Both Mr. Sledge and Darius appealed, and on July 16, 2024, the Eighth Circuit Court of Appeals reversed Darius' continuing criminal enterprise conviction, and remanded for a new trial, and also remanded to the district court on Mr. Sledge's drug conspiracy count so that it may vacate the lesser-included conviction. See Id. On August 12, 2024, the Government filed a motion to dismiss Count One of the Superseding Indictment in accordance with the opinion and judgement issued by the Eighth Circuit Court of Appeals (see Doc. No. 1652), and on August 13, 2024, the district court granted the government's motion - without determining if prejudicial spillover from evidence introduced in support of the reversed count required Mr. Sledge's remaining convictions to be upset. See Doc. No. 1654.


ARGUMENT

Rule 33 of the Federal Rules of Criminal Procedure provides that a court may vacate any any judgement and grant a new trial "if the interest of justice so requires." But "[a]lotions

for new trial [ ] are generally disfavored, . . . and '[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand.'" United States v. Aguilera, 625 F.3d 482, 486 (8th Cir. 2010) (quoting United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002)). The Eighth Circuit has also explained, "[a] district court may grant a new trial under Rule 33 only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred." United States v. McClellan, 573 F.3d 846, 857 (8th Cir. 2009) (quoting United States v. Starr, 533 F.3d 985, 999 (8th Cir. 2008)). A trial court has broad discretion in deciding whether to grant a motion for a new trial. United States v. Walker, 393 F.3d 842, 848 (8th Cir. 2005) (citing United States v. Red Elk, 368 F.3d 1047, 1053 (8th Cir. 2004)). The Eighth Circuit has made it clear that motions for a new trial are generally disfavored and are to be granted only where a serious miscarriage of justice may have occurred. United States v. Rice, 449 F.3d 887, 893 (8th Cir. 2006).

In this case, argues Mr. Sledge, it would be a serious miscarriage of justice to conclude that Mr. Sledge's conviction on the Counts at 2, 3, 4, and 5 did not result from a spillover from the case against him on Count 1. Although Mr. Sledge has searched, he was unable to find Eighth Circuit case law on this point, but points to cases from the Second and Third Circuit to support his position. See United States v. Ivic, 700 F.2d 51, 65 (2d Cir. 1983) (when confronted with a problem of taint, we must "consider whether the presence of the [invalidated] count had any spillover effect sufficiently prejudicial to call for reversal" of the remaining counts); United States v. Jones, 16 F.3d 487, 493 (2d Cir. 1994) (stating that "prejudicial spillover from evidence used to obtain a conviction subsequently reversed on appeal may constitute compelling prejudice" that requires overturning remaining counts); and United States v. Pelullo, 14 F.3d 881, 897–847 (3d Cir. 1994)).

As a backdrop, it is crucial to understand when prejudicial spillover may occur. When a defendant is convicted on more than one count involving different offenses at a single trial and an appellate court reverses the conviction on one of the counts, prejudicial spillover can occur only if the evidence introduced to support the reversed count would have been inadmissible at a trial on the remaining count. In evaluating a claim of prejudicial spillover, the Second and Third Circuits have articulated two different, yet somewhat similar analysis. See Ivic, 700 F.2d at 65; and Pelullo, 14 F.3d at 897.

In _Ivic_, the Second Circuit first examined whether the evidence on the reversed count would have tended to incite or arouse the jury into convicting the defendant on the remaining counts. Second, the Court looked to the similarities and differences between the evidence on the reversed count and the remaining counts. And finally, the Court looks to the strength of the government's case on the counts in question. Id. at 65. Similarly, the Third Circuit first looks at "whether the charges are intertwined with each other." Pelullo, 14 F.3d at 898 (citing United States v. Barkowski, 889 F.2d 1281, 1285 (3d Cir. 1989)). Second, the Court examines "whether the evidence for the different counts was sufficiently distinct to support the verdict on other separate counts," explaining that "if the evidence was distinct, it is likely that there was no prejudicial spillover effect." Id. (citing United States v. Brown, 583 F.2d 659, 669 (3d Cir. 1978)). Third, the Court ascertains "whether substantially all the evidence introduced to support the invalid conviction would have been admissible to prove other counts; and whether the elimination of the count on which the defendant was invalidly convicted would have significantly changed the strategy of the trial." Id (citing Ivic, 700 F.2d at 65). And finally, the Third Circuit examines "the charges, the language that the government used, and the evidence introduced during the trial to see whether they [were] 'of the sort to arouse a jury'" or "branded [the defendant] with some terms with 'decidedly pejorative connotation.'" Id. (quoting Ivic, 700 F.2d at 65).

While these two lines of cases appear at first blush appear to be distinguishable, they are in fact consistent. When the reversed and remaining counts arise from an identical fact pattern and all evidence introduced on the reversed count would have been admissible anyway, a defendant will have a difficult time establishing prejudice. Likewise, when the reversed and remaining counts arise from completely distinct fact patterns and the evidence can be easily compartmentalized, normally the Courts can have undiminished faith a jury has followed the Court's instructions and has evaluated each count on the evidence attributed to it. But it is in cases such as Mr. Sledge's in which evidence is introduced on the invalidated count that would otherwise be inadmissible on the remaining counts, and was presented in such a manner that tends to indicate that the jury

probably utilized this evidence in reaching a verdict on the remaining counts, that spillover has occurred.

In practice, therefore, prejudicial analysis begins by asking whether any of the evidence used to prove the reversed count would have been inadmissible to prove the remaining counts — i.e., whether there was any spillover of inadmissible evidence. If the answer is "no" the analysis should end. But if the answer is "yes", as is in Mr. Sledge's Case, it must be considered whether the verdict on the remaining counts was affected adversely by the evidence that would have been inadmissible at a trial limited to that count. See 28 U.S.C. section 2111 ("On the hearing of any appeal... the court shall give judgement after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); Fed.R.Crim.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); United States v. Rooney, 37 F.3d 847, 856 (2d Cir. 1994)("It is only in those cases in which evidence is introduced on the invalidated count that would otherwise be inadmissible on the remaining counts, and this evidence is presented in such a manner that tends to indicate that the jury probably utilized this evidence in reaching a verdict on the remaining counts, that spillover prejudice is likely to occur.")(emphasis in original).

CONCLUSION

As the Court reversed Count One of the Superceding Indictment, this Court must determine as it will, based on the facts of this case, that prejudicial spillover has been introduced in support of Count One — the reversed Count — requires Mr. Sledge's remaining convictions to reversed, and a new trial ordered as to those Counts.

Respectfully submitted,

August 24, 2024

Brian Sledge, Pro Se

# 05415-509
F.C.I. Hazelton
P.O. Box 5000
Bruceton Mills, WV 26525